IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

DONNA LYNN HENRY                                                    PLAINTIFF

V.                                    NO. 12-2282

CAROLYN W. COLVIN,[1]
Acting Commissioner of the Social Security Administration          DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Donna Lynn Henry, brings this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of a decision of the Commissioner of the Social Security Administration

(Commissioner) denying her claims for a period of disability and disability insurance benefits

(DIB) and supplemental security income (SSI) benefits under the provisions of Titles II and XVI

of the Social Security Act (Act). In this judicial review, the Court must determine whether there

is substantial evidence in the administrative record to support the Commissioner's decision. See

42 U.S.C. § 405(g).

Plaintiff protectively filed her applications for DIB and SSI on January 13, 2010, alleging

disability since December 18, 2009, due to: irritable bowel syndrome; depression; diverticulitis;

anxiety and panic disorder; high blood pressure; hiatal hernia; and reflux. (Tr. 166-168, 174-177,

206, 210). An administrative hearing was held on April 21, 2011, at which Plaintiff appeared

with counsel and testified. (Tr. 43-90).

By written decision dated August 16, 2011, the ALJ found that during the relevant time

---

[1]Carolyn W. Colvin, has been appointed to serve as acting Commissioner of Social Security, and is substituted as
Defendant, pursuant to Rule  25(d)(1) of the Federal Rules of Civil Procedure.

AO72A
(Rev. 8/82)

period, Plaintiff had an impairment or combination of impairments that were severe: osteoarthritis of the lumbar spine; chronic neck and low back pain; irritable bowel syndrome; hypertension; migraine headaches; depressive disorder; generalized anxiety disorder; and post-traumatic stress disorder (PTSD). (Tr. 13). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 14). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant is limited to work where interpersonal contact is incidental to the work performed, the complexity of tasks is learned and performed by rote, with few variables and little judgment required, and the supervision required is simple, direct, and concrete.

(Tr. 17).  With the help of a vocational expert (VE), the ALJ determined Plaintiff was not capable of performing her past relevant work, but that there were other jobs Plaintiff would be able to perform, such as sewing machine operator, small product assembler, and inspector. (Tr. 23-24).  Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied the request on September 20, 2012. (Tr. 1-4). Subsequently, Plaintiff filed this action. (Doc. 1). Both parties have filed briefs and this case is before the undersigned for report and recommendation. (Docs. 15, 16).

## I.    Evidence Presented:

Plaintiff was born in 1969 and completed high school.  (Tr. 206, 211).  A review of the 1,475 page transcript indicates that Plaintiff began having issues with ovarian and abdominal pain as early as 2002, which continued up until the onset date of December 18, 2009, and

AO72A
(Rev. 8/82)

beyond. (Tr. 287- 291, 293, 294-295, 307-318, 328-331, 341-342, 344, 346-347, 349, 465, 467-469, 476, 479-490, 495, 498, 536-537, 541-543, 546, 548- 550, 552, 562, 564, 567, 569, 573, 599, 600, 603-604, 608, 610, 615-616, 618-619, 623, 631, 633-638, 642, 645-646, 649, 654-660, 663, 673, 680-681, 693-695, 699, 726, 785). She also began complaining of anxiety and depression prior to the onset date. (Tr. 468-469, 496-497, 649, 660, 664, 679, 684, 686).

In addition, prior to the onset date, a laparoscopic-assisted vaginal hysterectomy was performed on December 9, 2002 (Tr. 552); a colonoscopy and upper endoscopy were performed on July 3, 2008 (Tr. 654-657); a diagnostic laparoscopy, laparoscopic cholecystectomy, and laparoscopic liver biopsy were performed on July 9, 2008 (Tr. 651); a small bowel obstruction was removed in late December of 2008 (Tr. 344-347); and capsule and upper GI endoscopies were performed in February and April of 2009. (Tr. 290-291, 295).

On December 21, 2009, a Transvaginal Pelvic Ultrasound was performed on Plaintiff, which revealed normal ovaries with evidence of resolution of the cyst. (Tr. 522). On December 22, 2009, Plaintiff presented to St. Edward Mercy Clinic-Primary Care Associates, complaining of abdominal pain into her back and pelvis. (Tr. 362). Dr. Andrew B. Riche, of Cooper Clinic, concluded that Plaintiff's anxiety was marginally controlled, and he started Plaintiff on Wellbutrin, and found that Plaintiff's hypertension was controlled on Atenolol. (Tr. 363). On December 28, 2009, a CT of Plaintiff's abdomen and pelvis revealed there was no acute abnormality evidence in the abdomen or pelvis, and there was a 1.8 cm follicle on the right ovary as an incidental finding. (Tr. 305).

On January 11, 2010, Plaintiff underwent a failed/abandoned colonoscopy, secondary to pain response. (Tr. 301). The next day, Plaintiff received a barium enema, and the impression

-3-

was single colonic diverticula noted in the transverse colon, otherwise unremarkable barium enema. (Tr. 298). On January 13, 2010, Plaintiff returned to St. Edward Mercy Clinic, complaining of persistent abdominal pain/cramping, and alternating diarrhea/constipation. (Tr. 360). The impression given was suspected IBS (irritable bowel syndrome), and she was to begin a high fiber diet and Zoloft, and was to arrange for Christian counseling.

On February 12, 2010, Plaintiff presented herself to St. Edward Mercy Clinic, reporting that Bentyl made her feel drugged and gave her diarrhea twelve times a day.   (Tr. 358). The impression was:

1. IBS
2. Depression (she was to begin a trial of Cymbalta)
3. HTN controlled
4. F/U 1 month

(Tr. 359).

On March 11, 2010, Plaintiff went to St. Edward Mercy Clinic, complaining of abdominal pain, nausea, fatigue, confusion, and dizziness.  (Tr. 461). She reported that her abdominal cramping and bloating were somewhat improved, but worsened again the previous day.  Plaintiff was encouraged to see a psychiatrist. (Tr. 462).

On April 5, 2010, Plaintiff saw Dr. Thomas E. Cheyne at River Valley Musculoskeletal Center, complaining of left hand numbness and back and neck pain. (Tr. 408). She also reported having chronic low back pain over the previous six months, with left leg pain and numbness extending down the left leg. (Tr. 408-409). She reportedly smoked one pack of cigarettes daily, and had approximately 20% limitation of range of motion of the head and neck in all directions. (Tr. 409). She had normal motor function in the upper extremities, but had numbness in the left

-4-

fourth and fifth fingers. (Tr. 409). Plaintiff was able to bend to touch her ankles, walk on her toes and heels without difficulty, and had normal sensory and motor function in the lower extremities. (Tr. 409). The impression given was cervical radiculopathy to rule out cervical disk protrusion, and chronic lumbar pain with radiculopathy to rule out lumbar disk protrusion. (Tr. 410). X-rays of Plaintiff's lumbar spine were normal, her AP pelvis x-ray was normal, and x-rays of her cervical spine were normal. (Tr. 411).

On April 12, 2010, Plaintiff reported to St. Edward Mercy Clinic that she wanted to change her depression medicine from Zoloft to Klonopin. (Tr. 459). She also complained of high blood pressure. (Tr. 459). At that time, the impression was:

> 1. IBS - symptomatically improved
> 2. BUE numbness - ? Etiology. No cervical symptoms. Neg. head CT. Normal exam
> 3. Psych/Anxiety - Pt with profound anxiety, not adequately treated/controlled-likely worsening/exacerbating physical symptoms. Pt unwilling in past to see VISTA or WACG. Referred to Kathleen Kraelik, whom she did not like. Stopped cymbalta (self-d/e'd). Pt instructed she must commit to seeing psych to address her mental health issues. Will set up. Pt instructed that further non-compliance will result in termination. Start Pexeve (Pt educated); refill Klonopin.

(Tr. 460).

On April 14, 2010, Dr. Bill F. Payne completed a Case Analysis, and concluded that Plaintiff's physical impairments were non severe. (Tr. 375).

On April 15, 2010, Plaintiff saw Dr. Cheyne at River Valley Musculoskeletal Center, and he concluded that Plaintiff was not a surgical candidate, as Plaintiff's lumbar MRI indicated some bilateral facet hypertrophy in the lower lumbar spine, primarily at L4-5, but with no focal disk herniations. (Tr. 405). Plaintiff was to continue light activity. (Tr. 405).

On April 22, 2010, a Mental Diagnostic Evaluation was performed by Terry L. Efird, Ph.D. (Tr. 377-381). During the evaluation, Plaintiff endorsed experiencing some difficulty with anxiety and depression, and said "I feel mad" most of the time. (Tr. 377). Dr. Efird reported that psychiatric medication had reportedly been prescribed for about six months, and the current medications were described as having been beneficial. (Tr. 378). Dr. Efird also reported that the ability to perform basic self-care tasks independently was endorsed, with some struggles with consistency related. The ability to perform household chores adequately was described as impaired by motivation and medical problems. (Tr. 378). Dr. Efird conclude that Plaintiff's fund of general information suggested probably average intellectual functioning, and a diagnoses of depressive disorder NOS would be offered. (Tr. 379-380). Dr. Efird diagnosed Plaintiff as follows:

|        |        |
|--------|--------|
| Axis I:   | Generalized anxiety disorder; depressive disorder NOS |
| Axis II:  | deferred |
| Axis V:   | 50-60 |

(Tr. 380). Plaintiff spoke about concerns regarding driving while taking some of the medications. (Tr. 380). Dr. Efird concluded that Plaintiff communicated and interacted in a reasonably socially adequate, intelligible and effective manner; had the capacity to perform basic cognitive tasks required for basic work like activities, although some degree of cognitive inefficiency was suggested on fund of information questions, digit span, and serial threes; appeared able to track and respond adequately for purposes of the evaluation, although she appeared to struggle a bit more with serial threes than would have been expected in comparison with estimated intellectual functioning; appeared to have the mental capacity to persist with tasks if desired; and had no remarkable problems with mental pace or performance during the evaluation. (Tr. 380).

-6-

A Psychiatric Review Technique form was completed by non-examining consultant, Dr. Winston Brown, on April 23, 2010. (Tr. 385-397). Dr. Brown concluded that Plaintiff had a mild degree of limitation in restriction of activities of daily living; a moderate degree of limitation in difficulties in maintaining social functioning and concentration, persistence, or pace; and had no episodes of decompensation, each of extended duration. (Tr. 395). In a Mental RFC Assessment of the same date, Dr. Brown found Plaintiff was moderately limited in seven categories and not significantly limited in thirteen categories. (Tr. 401). Dr. Brown further found that Plaintiff was able to perform work where interpersonal contact was incidental to the work performed, e.g. assembly work; where the complexity of tasks was learned and performed by rote, with few variables and little judgment required; and where supervision required was simple, direct and concrete (unskilled). (Tr. 401).

Plaintiff received a cervical epidural steroid injection on April 27, 2010 (Tr. 404, 415), which she reported did not help at all. (Tr. 403). Plaintiff reported to Dr. Cheyne on May 18, 2010, that she continued to have headaches with cervical pain and weakness in her left arm as well as numbness. (Tr. 403). On May 21, 2010, Plaintiff was reported as having limited active range of motion of the cervical spine by 20% in all planes and moderate palpable upper trapezius and rhomboid muscular spasms. (Tr. 438).

On May 26, 2010, an Electromyography revealed mild to moderate compromise of the left ulnar nerve across Plaintiff's elbow, and there was moderate slowing of the left ulnar nerve across the wrist. (Tr. 434).

On June 21, 2010, Plaintiff presented herself to the VA to establish care, with the following problems: 1. Ulnar entrapment - she is scheduled to see a plastic surgeon to get a nerve

-7-

release, and 2. Chronic low back pain.  (Tr. 1133-1134).  It was also reported that Plaintiff

smoked one and one-half packs of cigarettes per day. (Tr. 1135).  The plan was for Plaintiff to

establish a primary care physician within Ft. Smith; to add Paxil to help with her anxiety; and

to add Dicyclomine. (Tr. 1135).  Tobacco cessation was also discussed with Plaintiff and she

declined cessation medication treatment. (Tr. 1137).

On June 23, 2010, Plaintiff presented to Sparks Regional Medical Center complaining

of chest pain. (Tr. 843). The Assessment and Plan was as follows:

> 1. Chest pain, atypical in nature. We will rule out myocardial infarction,
> place the patient in observation....
> 2. Anxiety. We will continue the patient's home Klonopin
> 2. Hypertension. We will continue patient's home medications
> 4. Irritable bowel syndrome
> 5. History of gastric ulcer, recent EGD shows healed ulcer
> 6. Tobacco abuse. Counseled.

(Tr. 844). X-rays of Plaintiff's chest revealed no acute cardiopulmonary disease. (Tr. 886). A

myocardial perfusion imaging study was performed and showed no myocardial perfusion defects.

(Tr. 886).  The diagnosis was chest pain and dyspnea. (Tr. 914).  Plaintiff was discharged on

June 24, 2010, in stable condition. (Tr. 861).

On June 30, 2010, Plaintiff saw Dr. James E. Kelly, III, who specializes in plastic and

reconstructive surgery - hand and microsurgery, who recommend that she have a submuscular

transition of the ulnar nerve. (Tr. 441). Dr. Kelly performed a left cubital tunnel release and

tendon lengthening of the left elbow on July 20, 2010. (Tr. 1455).

On July 12, 2010, Plaintiff presented herself to the VA emergency room, complaining

of abdominal pain and nausea. (Tr. 1120). A CT of her abdomen and pelvis revealed no evidence

AO72A
(Rev. 8/82)

of small bowel obstruction and bibasilar atelectasis.[2] (Tr. 954).

On July 30, 2010, a Physical RFC Assessment was completed by non-examining consultant Dr. Lucy Sauer. (Tr. 447-454). Dr. Sauer found that Plaintiff was able to perform light work. (Tr. 454).

On August 14, 2010, Plaintiff presented herself to Sparks Regional Medical Center's emergency room complaining of diarrhea, weakness or fatigue, body aches, and headaches. (Tr. 791). Plaintiff was diagnosed with dizziness and diarrhea, and "? b12 deficiency," and nonspecific acute abdominal series. (Tr. 815, 819).  Plaintiff then called the VA and told them she had been to the emergency room for fatigue, weakness and diarrhea, and was told she had a B12 deficiency.  (Tr. 1110). She said she was still not feeling well, and was told to follow up with her primary care physician and go to the VA emergency room if symptoms persisted or worsened. (Tr. 1110).

On August 16, 2010, Plaintiff followed up with Dr. Kelly, and he reported that Plaintiff was free to do anything she would like without restriction. (Tr. 1452).

On August 19, 2010, Plaintiff called the VA and reported that she was exhausted and could barely get out of bed, that she was becoming overwhelmed, and had body aches. (Tr. 1108). Plaintiff was offered a consult with the Mental Health Center, but she thought something medically related was going on, and wanted to be cleared medically. (Tr. 1108). On August 20, 2010, Plaintiff was seen at the VA, saying she was very fatigued, and that since she had been diagnosed with IBS in December of 2009, she had declined physically - no energy, chronic

---

[2]Atelectasis - Decrease or loss of air in all or part of the lung, with resulting loss of lung volume itself.  Stedman's Medical Dictionary 173 (28th ed. 2006).

fatigue, unable to accomplish even the basic daily tasks, chronic pain (bloating and diarrhea), and that this was impacting her relationships. (Tr. 1095). Plaintiff's boyfriend presented her to the VA after she reportedly stated that she was not able to "go on like this" (in pain) and when asked if she may harm herself, Plaintiff stated "I am afraid I might" if she returned home. (Tr. 1099). It was also reported that Plaintiff was witnessed going outside to smoke with her boyfriend with a steady gait and no difficulty, and when it was time for her to go to unit 1A, she did not want to ambulate. "It is too far." (Tr. 1107).

On August 20, 2010, a Psychiatric Evaluation was performed by Dr. Thomas E. Renaghan, a psychiatrist. (Tr. 971-976). Dr. Renaghan reported that Plaintiff said she had stopped medications in the past because she was feeling all right, indicating that perhaps medications have worked. (Tr. 976). Dr. Renaghan diagnosed Plaintiff as follows:

| | |
|---|---|
| Axis I: | Depression NOS |
| | R/o mood disorder due to irritable bowel syndrome |
| | R/o PTSD |
| Axis II: | deferred |
| Axis III: | see PMH |
| Axis IV: | occupation, finances, ongoing health problems |
| Axis V: | Current GAF - 55 |

(Tr. 876). On August 24, 2010, a VA Gastroenterologist recommended that Plaintiff start taking fiber . (Tr. 990).

On September 1, 2010, Plaintiff presented herself to the VA, and was seen by Dr. Janet Guyer. (Tr. 1047). She assessed Plaintiff with abdominal pain, back pain, and anxiety. (Tr. 1049). By September 7, 2010, Plaintiff's symptoms were better, and she had much less discomfort and less gas. (Tr. 1044).

On September 10, 2010, a report from the VA indicated that Plaintiff disclosed for the

-10-

first time in counseling military sexual trauma that occurred on three occasions during her time

in the service. (Tr. 1036). She was then diagnosed as follows:

| | |
|---|---|
| Axis I: | PTSD, chronic |
| | Depression NOS |
| Axis II: | deferred |
| Axis III: | Irritable Bowel Syndrome |
| | Allergies, FD&C red dye, quinine, iodinated intravsasc |
| | contrast, morphine |
| Axis IV: | stressors: occupation, finances, ongoing health problems, |
| | sexual assault |
| Axis V: | GAF at admit/discharge: 55 |

(Tr. 1039).

On September 13, 2010, Plaintiff was seen by Dr. Pearl C. Beguesse, a Psychiatrist at the

VA.    Plaintiff told Dr. Beguesse that she had kept busy taking care of her children, watching

some television with her family and significant other on Monday nights, reading novels, and

doing some activities on the computer. (Tr. 1032).  Dr. Beguesse found that Plaintiff was neatly

dressed, with good grooming and hygiene, was cooperative and pleasant with good eye contact,

normal speech, and had an "okay" mood. (Tr. 1033).  She found Plaintiff's affect was broad and

mood-congruent, her thoughts were logical and goal directed, she denied any auditory or visual

hallucinations or delusions, she was oriented to time, place, and person, her memory was intact

and her concentration was good. (Tr. 1033). She denied any suicidal or homicidal ideation, and

her judgment and insight were good. (Tr. 1033). In nurse intake notes, it was reported that

Plaintiff stated her depression "comes and goes" and that "I have more stress than depression."

(Tr. 1035).

On September 20, 2010, Plaintiff saw Dr. Kelly again, concerned about the dimensions

of her arm. (Tr. 1451). Dr. Kelly noted that Plaintiff had recovered the sensation in the back of

-11-

her hand and the only thing that was left was the 5th fingertip. (Tr. 1451). She had no cramping

any longer in the hand and had no numbness in the elbow tip. (Tr. 1451). Dr. Kelly reported that

Plaintiff had not been using the arm fully and for several months before the surgery and a month

after the surgery, and had some muscle wasting, which he thought was more visual, but that

Plaintiff thought it was more severe. Dr. Kelly saw nothing wrong. (Tr. 1451).

On October 6, 2010, Plaintiff underwent a colonoscopy, which was normal. (Tr. 979,

1146).

On November 15, 2010, Plaintiff reported to the VA that she was moving some furniture

and noticed a reflection at the bottom of her vision. She reported she had lost vision completely

in the lowest portion of her visual field described as a window coming over the bottom of her

vision. (Tr. 1280). On November 16, 2010, Plaintiff underwent a retinal image test. (Tr. 1189).

The assessment was subjective visual field loss left eye - the retina was fully intact. Plaintiff was

educated on possible hemiretinal artery occlusion/multiple sclerosis/idiopathic visual

disturbance. (Tr. 1192). An MRI of Plaintiff's orbit, face and neck revealed no findings of optic

neuritis and multifocal nonspecific cerebral white matter hyperintensities. (Tr. 1160).

On November 22, 2010, Plaintiff again saw Dr. Beguesse, reporting that she had been

doing "not real great." (Tr. 1255). Plaintiff reported that she had an incident involving her left

eye and had an MRI done that showed evidence of "mini strokes." (Tr. 1255). Plaintiff reported

that she had kept busy walking a mile each morning, going to activities with her daughters,

spending time with her boyfriend, baking, and conversing with Army Moms via the internet. (Tr.

1255). She had no complaints that day, and felt her medications had been helping. (Tr. 1255).

Dr. Beguesse reported that Plaintiff was neatly dressed with good grooming and hygiene, was

-12-

cooperative and pleasant with good eye contact, her speech was normal, her mood was "anxious, but better now," her affect was broad and mood-congruent, her thoughts were logical and goal-directed, she denied any auditory or visual hallucinations or delusions, was oriented to time, place, and person, her memory was intact and concentration was fair, and her judgment and insight were good. (Tr. 1256).

On January 24, 2011, Plaintiff presented to the VA with a worsening headache for several days and noticed visual changes she experienced previously. (Tr. 1230). Her blood pressure was also high. (Tr. 1237). Plaintiff reported she kept busy doing activities and taking care of her children, taking her daughter to doctors' appointments since her motor vehicle accident, spending time with her significant other, and planning a get-together with the Veterans Mom group. She had no complaints and felt her medications had been helping. (Tr. 1239). Her mood was found to be "apprehensive" and her affect broad, anxious and mood-congruent. (Tr. 1240). Plaintiff denied depression or suicidal or homicidal ideation, and complained of visual problems when her blood pressure increased. (Tr. 1242). Plaintiff reported she smoked and that she wanted to quit. (Tr. 1242). Her activities included going to ball games with her children. (Tr. 1242).

On January 26, 2011, a procedure was performed on Plaintiff - left occipital nerve block and trigger point injection. (Tr. 1315). Plaintiff was to limit her stress, decrease her caffeine intake gradually, and start Nortiptyline and Midrin to help her headaches and sleep. (Tr. 1318).

Plaintiff continued to have high blood pressure and headaches throughout the month of January, February and some in March of 2011. (Tr. 1185, 1200-1202, 1216-1217, 1219, 1223-1227, 1310-1312, 1314-1315).

On March 3, 2011, a CT of Plaintiff's pelvis revealed mildly enlarged fatty liver without

-13-

other acute hepatobiliary pathology, post cholecystectomy; probable low grade inflammatory bowel process involving rectosigmoid colon, etiology unclear, colonoscopy recommended; and status post hysterectomy with 3.6 x 2.8 -cm diameter left adnexal cyst, possibly arising from the left ovary. (Tr. 1156).

On March 4, 2011, Plaintiff was diagnosed as follows:

| | |
|---|---|
| Axis I: | PTSD - chronic |
| | Depression NOS |
| Axis II: | deferred |
| Axis III | Irritable Bowel Syndrome |
| | Allergies: FC& C red dye #40 Lake, quinine, iodinated intravasc contrast, morphine |
| Axis IV: | stressors: occupation, finances, ongoing health problems, sexual assault |
| Axis V: | GAF at admit/discharge: 56 |

(Tr. 1445).

On March 9, 2011, a Medical Source Statement of Ability to do Work-Related Activities (Physical) was completed by one of Plaintiff's treating physicians, Dr. Janet Guyer. (Tr. 1148-1150). Dr. Guyer reported that Plaintiff was very limited in sitting, standing, and walking, and could occasionally lift and carry 21-50 lbs.; frequently 11-20 lbs.; and continuously 1-5 and 6-10 lbs. (Tr. 1149). Dr. Guyer further found that Plaintiff could use her hands for repetitive action such as simple grasping, pushing and pulling, and fine manipulation for both right and left hands, and could use both feet for repetitive movements. (Tr. 1149). She found Plaintiff was able to occasionally bend, squat, crawl, climb, stoop and crouch, and could frequently reach above her head and kneel. (Tr. 1149). Dr. Guyer found Plaintiff's pain to be moderate (could be tolerated but would cause marked handicap in the performance of the activity precipitating the pain), and would sometimes need to take unscheduled breaks during an eight hour working shift. (Tr.

-14-

1150). Dr. Guyer opined that Plaintiff's impairment was likely to produce both good and bad days, and that she was likely to be absent from work as a result of the impairments or treatment about two days per month. (Tr. 1150).

On March 16, 2011, Plaintiff presented to the neurology clinic at the VA, stating she had not decreased her caffeine intake, and that her headaches were better. (Tr. 1300-1301).

On March 28, 2011, Plaintiff reported to the VA that she thought she may have a blockage again, as she reported not having a bowel movement since Thursday. (Tr. 1439). A CT of her abdomen was performed, which revealed persistent mild bowel wall thickening of the distal descending and sigmoid colon, without surrounding inflammation, and without intrapertoneal mass, abnormal collection fluid or free air, and a possible localized area of mild inflammatory bowel disease, persistent since the prior examination, and no other acute findings. (Tr. 1413).

On March 29, 2011, an echogram of her abdomen was performed, and Plaintiff was assessed as follows:

> Hypertention
>> not well controlled
>> If persistent, to add Lisinopril
> Urinary Incontinence
>> Continue Oxybutynin
> Hx GI bleed
>> To obtain GI work ups from St. Edwards

(Tr. 1407). Plaintiff reported she was usually able to do her own activities of daily living, although some days she needed some assistance with bathing, meal preparation and housework. (Tr. 1408). A pelvis ultrasound performed on March 30, 2011, was essentially unremarkable. (Tr. 1328). A small bowel film performed on March 31, 2011, revealed a normal small bowel.

-15-

(Tr. 1325).

On April 13, 2011, a Medical Statement Concerning Depression with Anxiety, OCD, PTSD or panic disorder, was completed by Dr. Beguesse. (Tr. 1292-1294). Dr. Beguesse found Plaintiff to have extreme difficulties with her daily living activities, maintaining social functioning, and that Plaintiff was "extremely impaired" in fourteen categories; "markedly impaired" in three categories; "moderately impaired" in two categories; and " not significantly impaired" in one category. (Tr. 1292-1293). She opined that Plaintiff had been diagnosed with PTSD, depressive disorder not otherwise specified, military sexual trauma, and that the symptoms related to those disorders impacted her ability to function and her level of functioning in many different situations. (Tr. 1294).

## III.    Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  The ALL's decision must be affirmed if the record contains substantial evidence to support it.  Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently.  Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALL, the decision of the

-16-

ALL must be affirmed.  Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity.  Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§423(d)(3), 1382(3)(D).  A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given her age, education, and experience.  See 20 C.F.R. §416.920.  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity (RFC).  See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982);  20 C.F.R. §416.920.

**IV.    Discussion:**

Plaintiff raises the following issues on appeal: 1)  The ALJ failed to develop the record

-17-

as to Plaintiff's RFC; and 2) The ALJ erred in his credibility findings. (Doc. 15).

**A.     RFC:**

RFC is the most a person can do despite that person's limitations.   20 C.F.R. §404.1545(a)(1).   It is assessed using all relevant evidence in the record.   Id.   This includes medical records, observations of treating physicians and others, and the claimant's own description of her limitations.   Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004).   Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3).   The Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001).   Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace.   Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003).   "The ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC."   Id.

In this case, the ALJ found that Plaintiff had the RFC to perform light unskilled work. (Tr. 17).  Plaintiff argues that the ALJ excluded many factors that further limited the Plaintiff's RFC, such as little sleep, side-effects of medication, consistent inability to control her bladder or bowels, fatigue, poor attention and concentration.

The ALJ acknowledged all of the symptoms and limitations Plaintiff asserts in this case. (Tr. 17-18).  He also carefully addressed Plaintiff's impairments.  He addressed Plaintiff's back and neck pain, noting all of the objective medical evidence, and concluding that treatment records showed little treatment for back or neck pain, and that there was some indication in the

AO72A
(Rev. 8/82)

record that Plaintiff's neck pain may have been related to her left cubital tunnel syndrome, a condition that was surgically corrected in July of 2010. He also addressed Plaintiff's gastrointestinal system disorders, concluding that the objective evidence was not consistent with Plaintiff's allegations regarding her symptoms' severity and resulting limitations. (Tr. 18). Although Plaintiff suffered with gastrointestinal problems over a period of several years, the ALJ concluded that the objective evidence, the characterizing of her inflammatory bowel disease as "mild" and the lack of consistent abnormal physical examination findings, did not warrant a finding that these impairments were disabling. (Tr. 19).

Regarding Plaintiff's hypertension, the ALJ concluded that there was no indication that Plaintiff's hypertension was not reasonably controllable with appropriate treatment, and that the lack of consistent treatment for hypertension related symptoms supported his conclusion that Plaintiff's allegations regarding high blood pressure were not wholly credible. (Tr. 19). The ALJ also noted that Plaintiff's hypertension might also be a cause of her alleged headaches.

Regarding Plaintiff's mental impairments, the ALJ found that Plaintiff's treatment provider's observations were not consistent with her allegations regarding cognitive limitations, such as difficulty with memory or concentration. The Court agrees. Dr. Terry L. Efird noted that Plaintiff's medications were beneficial, and that Plaintiff appeared to have the mental capacity to persist with tasks, and that there were no remarkable problems with mental pace or performance. (Tr. 380). Dr. Winston Brown's Mental RFC Assessment and Psychiatric Review Technique report revealed that Plaintiff had a mild degree of limitation in restriction of activities of daily living, moderate degree of limitation in difficulties in maintaining social functioning and concentration, persistence, or pace, and had no episodes of decompensation, each of extended

-19-

duration. (Tr. 395). Dr. Brown also concluded that Plaintiff was able to perform unskilled work. (Tr. 401). This was affirmed by Dr. Kay Cogbill on June 10, 2010. (Tr. 428). The ALJ acknowledged and considered Dr. Beguesse's medical statement concerning depression with anxiety, OCD, PTSD, or panic disorder, and the extreme limitations she placed on Plaintiff's mental capabilities. (Tr. 22, 1292-1294). However, the Court agrees with the ALJ that Dr. Beguesse's assessment was extreme, when compared to her own observations, as recorded in her treatment records. (Tr. 1032-1035, 1255-1256).

Although Dr. Guyer and Dr. Beguesse were Plaintiff's treating physicians, the ALJ gave Dr. Guyer's opinion little weight and Dr. Beguesse's opinion no weight. (Tr. 22). "A treating source's opinion is to be given controlling weight where it is supported by acceptable clinical and laboratory diagnostic techniques and where it is not inconsistent with other substantial evidence in the record." Shontos v. Barnhart, 328 F.3d 418, 426 (8th Cir.2003), *paraphrasing* 20 C.F.R. § 404.1527(d)(2). When a treating source's opinion is not controlling, it is weighed by the same factors as any other medical opinion: the examining relationship, the treatment relationship, supporting explanations, consistency, specialization, and other factors. *See* 20 C.F.R. § 404.1527(d). Lehnartz v. Barnhart, 142 Fed.. Appx. 939, 940, 2005 WL 1767944, 1 (C.A.8 (Minn. (C.A.8 (Minn.),2005).

The Court believes the ALJ afforded the proper weight to all of the physicians' opinions, and for the foregoing reasons, as well as those reasons given in Defendant's well-stated brief, believes there is substantial evidence to support the ALJ's RFC determination.

**B.    Credibility Determination:**

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily

-20-

activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions.  See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).  While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole.  Id.  As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide."  Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

In this case, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms were not credible to the extent they were inconsistent with his RFC assessment. (Tr. 18).  The ALJ noted that Plaintiff was able to launder, wash dishes, cook, help her children with homework, play games with her children, feed her pets, drive, shop for groceries and household items, read, and attend to her personal hygiene and grooming. (Tr. 15-16).  In addition, as indicated earlier, Dr. Beguesse reported that Plaintiff kept busy taking care of her children, watching television, reading, and working on the computer, walking a mile each morning, going to activities with her daughters, baking, and conversing with Army Moms.  (Tr. 1032, 1255).  The ALJ also noted that Plaintiff alleged her medications caused numerous debilitating side-effects, but concluded that the treatment records did not indicate the severity of side-effects as Plaintiff alleged. (Tr. 20).

The ALJ observed that Plaintiff smoked a pack of cigarettes per day and drank a considerable amount of caffeinated beverages, although her treatment providers consistently

-21-

recommended she cease smoking and cut down considerably on the caffeinated drinks. (Tr. 21).

The ALJ stated further:

> I find it difficult to reconcile the claimant's continued cigarette smoking and caffeinated beverage drinking in light of the effects these substances have on individuals with gastrointestinal conditions, migraines, and anxiety. I further note that the claimant is a medical professional herself and is well aware of those effects.

(Tr. 21).

Based upon the foregoing, as well as those reasons given in Defendant's well-stated brief, the Court believes there is substantial evidence to support the ALJ's credibility findings.

**IV.    Conclusion:**

Accordingly, the Court recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice. **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 3rd day of December, 2013.

/s/ Erin L. Setser
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

-22-